UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DORTHY SESSOMS and GAYLE            )
ALLMAN, on behalf of themselves     )
and all others similarly situated,  )
                                    )
        Plaintiffs,                 )
                                    )
    v.                              )    NO.  3:05-0257
                                    )    JUDGE ECHOLS
GHERTNER & COMPANY, FRANK           )
GHERTNER, STEVEN GHERTNER, and      )
SCOTT GHERTNER,                     )
                                    )
        DEFENDANTS.                 )

## MEMORANDUM

Pending before the Court is the Motion for Partial Summary Judgment (Docket Entry No. 12) filed by Plaintiffs Dorthy Sessoms ("Sessoms") and Gayle Allman ("Allman"), to which Defendants Ghertner & Company ("Ghertner"), Frank Ghertner, Steven Ghertner, and Scott Ghertner have responded in opposition (Docket Entry No. 16) and Plaintiffs have replied (Docket Entry No. 26). Also before the Court is Plaintiffs' Motion to Strike Declarations of Florence Williams, Margaret Heath, and Judy Conditt (Docket Entry No. 23), to which Defendants have responded (Docket Entry No. 27). Finally, Defendants have filed a Motion for Attorneys' Fees and Costs (Docket Entry No. 28).

## I.  FACTUAL BACKGROUND

This is a lawsuit for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"). Plaintiffs claim they were not paid

1

overtime while working as property managers for Ghertner. The relevant facts, which will be expanded upon where necessary for purposes of the legal discussion, are as follows.

Ghertner is in the business of providing services to homeowners' associations of various subdivisions and condominium complexes. (Pf. SOF ¶¶ 12-13). Defendants Scott Ghertner and Steven Ghertner are brothers and the owners/shareholders of Ghertner. They serve as co-presidents, have operational control of the company, establish the business policies of the company, and make decisions on employment matters, such as whether to pay employees overtime. (Pf. SOF ¶¶ 11-12). Their father, Frank Ghertner, is the other named Defendant and is semi-retired.

Sessoms was employed by Ghertner in the position of "property manager" from August 27, 1997 through November 1, 2004. Allman was employed by Ghertner in the same capacity from February 27, 2003 through December 16, 2003. (Pf. SOF ¶¶ 1-2). During Plaintiffs' employment, Ghertner was subject to the provisions of the Fair Labor Standards Act ("FLSA"). (Pf. SOF ¶¶ 3-4). With the knowledge of Scott Ghertner, both Plaintiffs worked more than forty hours per week during some workweeks. (Pf. SOF ¶¶ 5-8). Neither received overtime pay during those weeks for work in excess of forty hours. (Pf. SOF ¶¶ 9-10).

As indicated, Ghertner provided services to homeowners' associations. A homeowners' association usually had a Board of

2

Directors which directed its activities. (Pf. SOF ¶ 15). The associations existed primarily to provide the following services to the homeowners: (a) to make sure that the common areas were maintained and repaired; (b) to address homeowners' complaints and questions; (c) to make sure that homeowners abided by the applicable property restrictions; (d) to make sure that bills for the common areas were paid; and (e) to collect and manage dues. (Pf. SOF ¶ 16). Ghertner either performed those services or assisted the associations in carrying out those tasks. (Pf. SOF ¶ 18). In return for its services, Ghertner received fees from the associations. (Pf. SOF ¶ 19).

Plaintiffs' positions required them to perform some of the services Ghertner provided to the homeowners' associations. (Pf. SOF ¶¶ 21-22). Defendants have no knowledge of the percentage of time that either Sessoms or Allman spent on the various duties each performed. (Pf. SOF ¶¶ 25-26). Both Sessoms and Allman asserts they spent more than 75% of their time (a) making sure the associations' common areas were maintained and repaired; (b) addressing homeowners' complaints and questions; and (c) making sure homeowners abided by the applicable property restrictions. (Sessoms Decl. ¶ 5; Allman Decl. ¶ 6).

Ghertner had an accounting/bookkeeping department which collected dues from homeowners for the homeowners' associations, paid bills for the homeowners' associations, and performed payroll

3

work for Ghertner's employees. (Pf. SOF ¶ 33). The department also assisted property managers in preparing budget documents and financial statements for homeowners' associations. (Scott Ghertner Depo. at 57). Ghertner's accounting/bookkeeping department also handled the receipt of the homeowners' association dues from homeowners, kept track of delinquencies, and wrote checks for homeowners' association expenses which were signed by Steven Ghertner and Scott Ghertner. (Pf. SOF ¶ 32).

While employed by Ghertner, Sessoms earned less than $38,000 per year while Allman never made more than $35,000 per year. (Pf. SOF ¶¶ 46, 47). In contrast, the Ghertner brothers each made approximately $300,000 per year, the "head bookkeeper" made almost $60,000.00 per annum, and the head of maintenance made between $50,000.00 and $60,000.00 a year. (Pf. SOF ¶ 48). Neither Sessoms nor Allman regularly supervised two or more full-time employees while working for Ghertner. (Pf. SOF ¶¶ 27-28).

The Ghertner brothers have no personal knowledge of Sessoms ever making a decision while she was employed by Ghertner as a property manager. (Pf. SOF ¶ 33, 35). Nor does either have personal knowledge of Allman ever making a decision while she was employed by Ghertner. (Pf. SOF ¶ 34, 36).[1] Similarly, Sandy

---

[1]While these facts are undisputed, the underlying support for the facts is the depositions of these individuals. Importantly, the deposition questions were framed in such a way as to inquire about whether, at that moment, the witnesses could remember any decisions having been made by the Plaintiffs. True, no specifics

4

Martin, who worked for a brief period as an administrative assistant to Allman, has no personal knowledge about either Sessoms or Allman making a decision while employed by Ghertner. (Pf. SOF ¶20 38-39).[2] Likewise, Steven Goldstein has no personal knowledge of either Plaintiff ever making a decision while she was employed by Ghertner as a property manager. (Pf. SOF ¶¶ 40-41).[3]

In her deposition, Kathleen Sutherland, who was a property manager and then became supervisor of the property managers for Ghertner, testified she too did not have any personal knowledge of Allman ever making a decision while Allman was employed by Defendant. (PF. SOF ¶ 42).[4] As for Sessoms, Sutherland recalls

---

were forthcoming; however, there were general statements about the Plaintiffs having to use their judgment and provide advice. For example, Scott Ghertner, himself a former property manager, testified that part of Plaintiffs' duties was to provide advice and counsel to the board of directors of the homeowners' associations. (Scott Ghertner Depo. at 42, 51). He also stated that, as a general rule, property managers would use their discretion to approve bills if the items were budgeted, and would handle emergencies as they developed. (Id. at 60-62).

[2]Again, while this is an agreed-upon statement of fact, it arises from a very narrow reading of Martin's deposition. A fair reading of Martin's testimony and the inferences to be drawn therefrom suggest that Allman made decisions with regard to determining which contractors to use, procuring bids, and recommending which bids to accept. (Martin Depo. at 16-21).

[3]This too is an undisputed fact. It appears, however, to be of limited evidentiary value since Goldstein was the director of maintenance for Ghertner and as such he could provide only limited insight from his perspective in working with Plaintiffs.

[4]Again, the questioning must be placed in context. In her deposition, Sutherland was asked if she had any "personal knowledge of a single decision Ms. Allman made while she was employed by

5

that on one occasion, Sessoms discovered a conflict of interest involving a homeowners' association board member and "had to make a decision about how to pursue the matter." (Pf. SOF ¶ 43).

Notwithstanding the foregoing, a fair inference to be drawn from the evidence before the Court is that Plaintiffs were the "face" of Ghertner so far as the homeowners' associations were concerned.[5] The record includes declarations from former presidents of homeowners' associations at which one or the other of the Plaintiffs was the property manager. Although the specifics of those declarations will make more sense in the context of the legal discussion, it suffices for present purposes to note that those declarants indicate Plaintiffs were integral to the decision-making process of the boards, and that the boards sought out, and implemented, Plaintiffs' advise on a myriad of matters. (Conditt, Martin & Heath Decls.).

## II. **APPLICATION OF LAW**

Both Plaintiffs have moved for partial summary judgment claiming they are entitled to judgment as a matter of law on the issue of whether they are exempt from the overtime requirements of

_____

Ghertner?" to which Sutherland asked "when you say personal knowledge, you mean something I observed her do, I was in the room when she made a decision?" Defense counsel then advised her to interpret the question however she wanted. (Sutherland Depo. at 121).

[5]With some reluctance, Allman admitted in her deposition that she was "one of the faces" the homeowners' associations would associate with Ghertner. (Allman Depo. at 50).

6

the FLSA and Defendants' liability for overtime back pay. They have also filed a Motion to Strike certain declarations and Defendants have filed a Motion for Attorneys' Fees and Costs in having to respond to the Motion to Strike.

## A. **Motion to Strike**

In response to Plaintiffs' Motion for Partial Summary Judgment, Defendants tendered the declarations of Florence Williams, Margaret Heath, and Judy Condatt, each of whom had served as a president of a homeowners' association. Plaintiffs move to strike those declarations on the grounds that the names of those individuals were not disclosed pursuant to Rule 26 of the Federal Rules of Civil Procedure, nor in response to interrogatory requests which asked for the identity of all witnesses supporting Defendants' case.

In opposition to the Motion to Strike, Defendants level a several-pronged attack. They claim that the declarants are well-known to the Plaintiffs because they were board members of homeowners' associations and Plaintiffs worked directly with them, almost on a daily basis. (Docket Entry No. 27 at 1). In fact, in their interrogatory responses, Plaintiffs identified board members of homeowners' associations as likely to have knowledge of their claims. (Id. at 5). Defendants also assert that, prior to the close of discovery, they did, in fact, express their intent to solicit rebuttal testimony from board members of homeowners'

7

associations.  (Id. at 4).   In any event, Defendants argue they had no obligation to disclose the names of the declarants because their testimony is only being used to rebut and impeach Plaintiffs' deposition testimony.

Rule 26 of the Federal Rules of Civil Procedure provides that "a party must . . . provide to other parties: (A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use for its claims or defenses[.]" Fed. R. Civ. P. 26(a)(1)(A).   Rule 33 provides that full written answers to interrogatories shall be provided generally within thirty days of service.  Fed. R. Civ. P. 33(b)(1).  Initial disclosures and responses to interrogatories are to be supplemented as new information becomes available.  Fed. R. Civ. P. 26(e).

Defendants' assertion they had no duty to identify the declarants since the declarants were known to Plaintiffs must be rejected.   "Nothing in Rule 26(a)(1)(A) states that a party need not identify a prospective witness if the other party has spoken with that witness" and "[n]othing in Rule 33 says that a party can omit information responsive to an interrogatory if the party thinks the other side might have some knowledge of that information." Hosea v. Langley, 2006 WL 314454 at *6 n.13 (S.D. Ala. 2006).

Even though Defendants did not disclose the names of the declarants in their initial disclosures or discovery responses, it

8

does not necessarily follow Defendants cannot use the declarations which have been filed. This is so because Defendants claim they made their intentions known to the Plaintiffs and because the declarations are being used for impeachment purposes.

Under Rule 26 of the Federal Rules of Civil Procedure,

A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:

(2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ.P. 26(e).

Defendants claim that after Plaintiffs' depositions, it became apparent that Plaintiffs, despite having the title of managers, were contending they never made decisions, or exercised discretion or independent judgment. Upon learning of these contentions, counsel for Defendants claims he verbally informed Plaintiffs he would likely offer rebuttal testimony from some homeowners' association board members and memorialized that intention in a letter.

As the foregoing excerpt from Rule 26(e) makes clear, parties are to supplement responses unless the additional information has

9

"otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(2). Given defense counsel's representation, the Court finds the present situation to be governed by the "otherwise" clause in Rule 26(e)(2). See, Gutierrez v. AT & T Broadband, LLC, 382 F.3d 725, 733 (7th Cir. 2004)(district court did not err in failing to strike affidavit of witness where witness was identified in 30(b)(6) deposition as having relevant information); Coleman v. Keebler Co., 997 F.Supp. 1102, 1107 (N.D. Ind. 1998)("[t]he duty to supplement imposed by Fed. R. Civ. P. 26(e)(1) does not require application of form over substance and hence where plaintiffs brought the identities of two witnesses to defendant's attention during deposition, Rule 26(e)(1) was "effectively satisfied").

In any event, the declarations of the board members of the homeowners' associations are being used to rebut Plaintiffs' contention that they did not exercise discretion or make business judgments. Rule 26(a)(1) excludes from disclosure the names of individuals who will be used by a party "solely for impeachment." Accordingly, the Motion to Strike will be denied.

While the Court will deny the Motion to Strike, fairness suggests that Plaintiffs should be allowed to depose these three witnesses. After all, Plaintiffs state that these three individuals were chosen to provide testimony from among a very large number of individuals who served on the boards of homeowners'

10

associations.  Accordingly, the Court will reopen discovery for a very short period solely to allow Plaintiffs' to depose Williams, Heath, and/or Conditt should they so desire.

**B.  <u>Motion for Attorneys' Fees and Costs</u>**

Defendants have moved for attorneys' fees and costs under Rule 37(a)(4)(B) for the effort expended in responding to Plaintiffs' Motion to Strike.  That request will be denied.

Rule 37(a)(4)(B) provides that if a motion relating to discovery is denied, the court "shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust."  Under the Rule, a court has discretion to deny expenses to the prevailing party where "the court finds that the making of the motion was substantially justified."  <u>Bryte v. American Household, Inc.</u>, 142 Fed. Appx. 699, 703 (4th Cir. 2005); <u>Campbell v. United States</u>, 209 F.R.D. 272, 273 (D.D.C. 2002). "A motion is 'substantially justified' if it raises an issue about which 'there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'"  <u>Doe v. Lexington-Fayette Urban County Gov't.</u>, 407 F.3d 755, 766 (6th Cir. 2005).

11

This Court finds that an award of attorneys' fees and expenses for Plaintiffs' having filed the Motion to Strike would be improper. Reasonable people could certainly differ as to the propriety of Defendants' failing to disclose the declarants' identities as evidenced by this Court's need to analyze and parse the relevant rules. Moreover, one of the grounds Defendants advanced for not having to supplement their disclosures or interrogatories – that Plaintiffs were aware of the declarants – is an argument which this Court has found to be without merit.

## C. **Plaintiffs' Motion for Partial Summary Judgment**

### 1. **Summary Judgment Standards**

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. <u>Celotex</u>, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## 2. <u>Substantive Analysis of Plaintiffs' Motion for Partial Summary Judgment Motion</u>

The FLSA requires that employers ordinarily pay their employees time and one-half for work exceeding forty hours per workweek. 29 U.S.C. § 207(a)(1). The FLSA provides exemptions from overtime for persons "employed in a bona fide executive, administrative, or professional capacity" and grants the Secretary of Labor broad authority to promulgate regulations to "define[] and delimit[]" the scope of the exemption. 29 U.S.C. § 213(a)(1). An employer who claims an exemption from the FLSA has the burden of

13

showing that the exemption applies and any exemption is narrowly construed against the employer. Martin v. Indiana Michigan Power Co., 381 F.3d 574, 578 (6th Cir. 2004).

In this case the administrative exemption is at issue. Although Plaintiffs were "property managers," a "job title alone is insufficient to establish the exempt status of an employee." 29 C.F.R. § 541.2. Instead, an employee is employed in a "bona fide administrative capacity" if her "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and her "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200.

Plaintiffs do not contest that their primary duties were office or non-manual work. Instead they claim that their duties were not related to the management or business operations of Ghertner – they merely provided the "product" Ghertner produces, property management services to its homeowners' association clients. (Docket Entry No. 14 at 8). Plaintiffs also assert they did not exercise discretion or independent judgment.

### a. Work Related to Management Policies or General Business Operations of the Employer

Plaintiffs claim that they spent the vast majority of their time (1) making sure the common areas of homeowners' associations were maintained and repaired; (2) addressing homeowners' complaints

14

and questions; and (3) assuring homeowners abided by the applicable property restrictions. They argue these duties were the essence of the very services that Ghertner was selling as its product to homeowners' associations in return for fees from those associations. Consequently, Plaintiffs claim they were merely performing the "production" work of Ghertner, as opposed to administrative tasks that are of substantial importance to the management or operation of Ghertner. For this assertion, Plaintiffs argue this Court should apply the "'production work' paradigm" and find that Plaintiffs are non-exempt employees under the FLSA. (Docket Entry No. 14 at 7-10).

The interpretive regulations regarding the administrative exemption "suggest a dichotomy between 'production' and 'administrative' jobs." Shaw v. Prentice Hall Computer Pub. Inc., 151 F.3d 640, 644 (7th Cir. 1998). "[T]he typical example of the production/administrative dichotomy is a factory setting where the 'production' employees work on the line running the machines, while the administrative employees work in an office communicating with the customers and doing paperwork." Id.

While the factory setting provides the typical example of the dichotomy, the Sixth Circuit has noted "[t]he regulations do not set up an absolute dichotomy under which all work must either be classified as production or administrative." Martin, 381 F.3d at 582. "Rather, the regulations distinguish production work from the

administrative operations of the business at 29 C.F.R. § 541.205(a) – thus production work cannot be administrative – and then go on to define the administrative operations of the business at 29 C.F.R. § 541.205(b)." Id.

Plaintiffs admit that they spent the vast majority of their time in three areas, all of which, according to the Defendants, require the use of discretion and decision making in various degrees. For instance, determining whether the yard men are properly maintaining the common areas and landscaping, deciding what and when repairs are made, responding to complaints and questions from the homeowners' associations and their members, and interpreting and applying homeowners' association agreements and related restrictions require the exercise of discretion and/or judgment.

In this case, the Court cannot conclude, as a matter of law, that the Plaintiffs' primary job duties, even as they describe them, do not relate to the administrative operations of Ghertner. "The administrative operations of the business include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 29 C.F.R. § 541.205(b). Here, at a minimum, Defendants have presented

16

evidence that Plaintiffs, as property managers, were out representing the company to the homeowners' associations.

Heath, the former president of the homeowners' association of Forrest Oaks II, states that she relied on Allman to provide the board with guidance, expertise, discretion and judgment in the handling of its affairs, and that Allman offered advice whenever asked, which was "frequently." (Heath Decl. ¶¶ 2-3). She also states that Allman used her authority to spend the board's money without first consulting the board. (<u>Id</u>. ¶ 4). Allman would also present bids to the board for services to be provided by contractors, and the board typically followed Allman's recommendation as to which contractor to use. (<u>Id</u>. ¶ 5). The board also depended on Allman to follow-up with the contractors to make sure that the services and/or work was done correctly. (<u>Id</u>. 6). Williams, the former president of Carriage Parke's homeowners' association, states that the board relied on Allman, its property manager, for expertise and advice and that Allman prepared and presented budgets to the board. (Williams Decl. ¶¶ 2-5).

As for Sessoms, Conditt, the former president of the homeowners' association for Hobbs House, states that the board relied on Sessoms for "guidance, expertise, discretion and judgment," and that she was a "trusted advisor to the board" which considered her advice and recommendations as being "extremely important." (Sessoms Decl. ¶¶ 2, 3). While president of the

17

board, Conditt worked with Sessoms on practically a daily basis and "constantly asked her what she thought the board should do in a number of situations" and Sessoms gave her advice. (Id. ¶ 4).

More specifically, Conditt claims Sessoms represented the homeowners' association board before the boiler inspector and Health Department pool inspectors; negotiated a resolution to concerns raised by the association's liability carrier; monitored contractors; and advised the board regarding problems with contractors. Conditt also asserts Sessoms provided advice on the proper way to deal with a homeowner who threatened a contractor; advised the board on how to deal with disputes among homeowners; advised the board on which vendors or contractors would be the best for the association; advised on the selection of an attorney; reviewed the insurers' liability coverage and advised the board regarding alternate insurers; made decisions on work to be done in emergency situations; negotiated contracts with vendors; and interpreted the governing documents related to the board's authority.

The activities described by the declarants appear to be in the nature of administration, as opposed to, production. Moreover, Plaintiffs' reliance on the production/administrative dichotomy may be misplaced.

It has been aptly noted that the production/administrative dichotomy may be inapplicable where the business of the employer is

18

providing services, as opposed to products or sales. See, Piscione v. Ernst & Young, LLP, 171 F.3d 527, 540 (7th Cir. 1999)(rejecting employee/consultant's argument that since he submitted reports to clients, the reports were "products"); DOL Opinion Letter, 2002 WL 32406595 (August 6, 2002)("these regulations demonstrate that the dichotomy between administrative employees and production and sales employees must take into account whether the employer in question is a company engaged in providing administrative services to its customers").[6]  For its part, the Sixth Circuit has observed that "the administrative versus production analysis does not fit all cases" and it "is only useful to the extent that it is a helpful analogy in the case at hand, that is, to the extent that it elucidates the phrase 'work directly related to the management policies or general business operations.'" Schaefer v. Indiana Michigan and Power Co., 358 F.3d 394, 402-403 (6th Cir. 2004).

Where, as here, a court finds the production/administrative analysis not particularly useful, the Court can look to "29 C.F.R. § 541.205(b) [for] further guidance on the 'types' of work that are administrative[.]"  As already indicated, this Regulation provides that the administrative exemption can apply where, for example, an employee is out representing the company. Hence, event coordinators for a convention center fall within the administrative exemption

_____

[6]Where a regulation is subject to different interpretations, an agency's opinion on the question is entitled to deference. Beck v. City of Cleveland, 390 F.3d 912, 919-920 (6th Cir. 2004).

19

where (among other things) they are responsible for planning events, negotiating with clients, arranging for contractors, and addressing client's requests and problems as they arose." <u>Bondy v. City of Dallas</u>, 77 Fed. Appx. 731, 732 (5th Cir. 2003). A consumer service coordinator who spends time negotiating with clients and settling billing, delay and cargo damage claims meets the administrative exemption. <u>Haywood v. North American Van Lines, Inc.</u>, 121 F.3d 1066, 1070 (7th Cir. 1997). And, a "vice president of sales" could be an administrative employee (despite his title) where his "work was more than merely production work and sales: it consisted of being on site with clients . . . and handling client relations and client services."

Such cases suggest just how amorphous the concept of "administrative" can be. Unquestionably it is fact specific, so much so that this Court has found it necessary to delimit the descriptions of the employee's jobs in the foregoing examples. It is for this very reason, plus the fact that no clear picture has emerged as to what present Plaintiffs did on a day-to-day basis, that the Court cannot determine, as a matter of law, that Plaintiffs' work was not related to management policies or general business operations of Ghertner.

### b. Discretion and Independent Judgment

The governing regulations are written in the conjunctive, meaning that, to take advantage of the exemption, the employer must

not only establish office or non-manual work related to management policies or general business operations of the employer, but also the exercise of discretion and independent judgment. <u>Schaeffer</u>, 358 F.3d at 403. "Discretion and independent judgment" generally means "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a). "This process implies 'that the person has the authority or power to make an independent choice, free from immediate direction or supervision, and with respect to matters of significance.'" <u>Refro v. Indiana Michigan Power Co.</u>, 370 F.3d 512, 518-19 (6th Cir. 2004) quoting, 29 C.F.R. § 541.207(a). The Sixth Circuit has held that to be exempt, an employee must "customarily and regularly" exercise discretion and independent judgment. <u>Douglas v. Argo-Tech Corp.</u>, 113 F.3d 67, 72 (6th Cir. 1997).

In this case, both Plaintiffs declare, in blanket fashion, that "I made no job decisions in carrying out my job duties." (Allman Decl. ¶ 6; Sessoms Decl. ¶ 6) and note that the Ghertner employees who were deposed could not point to specific decisions that either Plaintiff made as a property manager. Nevertheless, to arrive at the conclusion that a factual question is presented on this issue, this Court need look no further than the declarations submitted by the board members of the homeowners' associations. As thoroughly set out in the preceding subsection, there is evidence

to suggest that the homeowners' associations consistently and repeatedly relied upon Plaintiffs for advice. Inasmuch as the Plaintiffs were working for Ghertner when they proffered advice, it appears that the advice (which implies a decision-making process) was effectively the advice of Ghertner. Accordingly, when the facts are viewed in a light most favorable to Defendants, this Court cannot decide, as a matter of law, that Plaintiffs did not exercise discretion and independent judgment.

## IV. CONCLUSION

On the basis of the foregoing, Plaintiffs' Motion for Partial Summary Judgment (Docket Entry No. 12) will be denied. Likewise, Plaintiffs' Motion to Strike Declarations of Florence Williams, Margaret Heath and Judy Condit (Docket Entry No. 23) will be denied. Finally, Defendants' Motion for Attorneys' Fees and Costs (Docket Entry No. 28) will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

22